Randy J. Cox
Randy J. Tanner
BOONE KARLBERG P.C.
201 West Main, Suite 300
P.O. Box 9199
Missoula, MT  59807-9199
Telephone:  406.543.6646
rcox@boonekarlberg.com
rtanner@boonekarlberg.com

William J. Duffy, *pro hac vice*
Kenzo S. Kawanabe, *pro hac vice*
Benjamin B. Strawn, *pro hac vice*
Elizabeth H. Temkin, *pro hac vice*
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, CO  80202-1500
william.duffy@dgslaw.com
kenzo.kawanabe@dgslaw.com
ben.strawn@dgslaw.com
elizabeth.temkin@dgslaw.com

*Attorneys for Defendant Atlantic Richfield Company*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA

| | |
|---|---|
| ASARCO LLC, a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> ATLANTIC RICHFIELD COMPANY, a Delaware Corporation, <br><br> Defendant. | Case No.:  6:12-cv-00053-DLC <br> Hon. Dana L. Christensen <br><br> **MOTION TO ALTER OR AMEND JUDGMENT** |

4483537

## INTRODUCTION

Defendant Atlantic Richfield Company ("Atlantic Richfield") hereby moves to alter or amend the Court's June 26, 2018 judgment (Doc. No. 269). Specifically, Atlantic Richfield moves to reduce the amount of money allocated in the judgment; the Court allocated a total of $111,403,743, but based on the evidence admitted at trial should have allocated only $61,400,000.[1]  The additional $50 million the Court awarded are funds that Montana Environmental Trust Group ("METG") has not spent and may never spend (the "Unspent Funds").  Those funds are not recoverable, or at least are not recoverable until some future time when Asarco might demonstrate the funds have been spent to address an environmental or health risk at the Site.

There are three reasons why it is inappropriate to include the Unspent Funds in the Court's judgment.  First, Asarco failed to prove that the Unspent Funds are necessary costs of response.  Second, CERCLA provides a declaratory relief

---

[1] Atlantic Richfield does not admit that the evidence at trial warranted any allocation of costs to Atlantic Richfield, and it hereby preserves the arguments detailed in its Proposed Amended Post-Trial Findings of Fact and Conclusions of Law (Doc. No. 267).  *See* Fed. R. Civ. P. 52(a)(5) ("A party may later question the sufficiency of the evidence supporting the findings, whether or not the party requested findings, objected to them, moved to amend them, or moved for partial findings.").  As before, Atlantic Richfield's arguments as to the appropriate allocation are in the alternative to its argument that the evidence dictates zero allocation of costs to Atlantic Richfield.  Atlantic Richfield submits this Motion without any prejudice to the arguments it has available on appeal.

process for allocating and then awarding costs paid for remediation work after a judgment, but Asarco did not invoke that process.  Third, the cases Asarco cited – and the Court adopted – as the basis for awarding the Unspent Funds are not applicable.

The Unspent Funds represent the premium Asarco paid for settling with the United States and obtaining a complete release from future liability at a time when the costs of remediation at the Site were uncertain.  Asarco elected to bear the risk of not recovering that settlement premium and it is inappropriate to shift any portion of that payment to Atlantic Richfield.  The Court should either disallow any allocation of the Unspent Funds or defer allocating them until they have actually been spent and Asarco comes forward with evidence establishing they are necessary response costs under CERCLA.

## LEGAL STANDARD

Fed. R. Civ. P. 59(e) gives the Court discretion to alter or amend its judgment.  "In general, there are four basic grounds upon which" the Court may grant "a Rule 59(e) motion . . . : (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law."  *Allstate Ins.*

3

*Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). "[T]he district court enjoys considerable discretion in granting or denying the motion." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999). Here, Atlantic Richfield moves the Court to amend its judgment to correct manifest errors of law and fact.

## **ARGUMENT**

### I)  **THE UNSPENT FUNDS ARE NOT NECESSARY RESPONSE COSTS.**

Asarco bore the burden to prove that the costs for which it sought contribution are necessary CERCLA response costs. Pretrial Order, Doc. No. 234, pp. 13-14 (citing 42 U.S.C. § 9607(a)(4)(A)-(B)); *see also id.* at p. 13 ("The party seeking contribution bears the burden of proof at both prongs of the Court's inquiry." (internal quotation omitted)). The necessity standard "requires that an actual and real threat to human health or the environment exist before initiating a response action." *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 871 (9th Cir. 2001).

Asarco failed to prove that any "actual and real threat to human health or the environment" exists such that the Unspent Funds will be expended for cleanup and thereby constitute necessary response costs. The only evidence relevant to *Carson Harbor*'s risk-based definition of necessity was testimony from Atlantic Richfield's expert, Brian Hansen, and the documents upon which he relied. Mr. Hansen explained that the IM remedies combined with institutional controls fully

4

protect human health and the environment.  RealTime Trans. Vol. 7, 109:12-15.[2]

The institutional controls prevent property owners from using contaminated

groundwater.  Findings of Fact, Conclusions of Law and Judgment, Doc. No. 269

at FOF ¶ 72.  Mr. Hansen's testimony that those controls, combined with the IM

remedies, fully protect health and the environment was consistent with the

numerous METG documents stating the same.  *E.g.*, Ex. 976-0081.  Atlantic

Richfield's evidence of the amount of costs required to complete the work done to

protect health and the environment ($61.4 million) also was undisputed.  *Id.* at

FOF ¶ 75.

Asarco argued that testimony from its expert, Margaret Staub, supported a

judgment allocating the Unspent Funds.  And based on Ms. Staub's testimony, the

Court found that "unless and until the groundwater is restored to achieve MCLs

and drinking water standards, something more substantial will need to be done."

*Id.* at ¶ 78.  Ms. Staub's testimony does not, however, establish that Unspent Funds

will be expended by METG to abate an unacceptable "threat to human health or

the environment" in the future.  Indeed, Ms. Staub gave no testimony about

protection of human health and the environment, other than to acknowledge it as

---

[2] Atlantic Richfield includes citations to the pages of the RealTime transcript of trial proceedings for the Court's convenience only.  Atlantic Richfield acknowledges the unofficial nature of the RealTime transcript and does not intend for these citations to suggest otherwise.

the standard for CERCLA remedies. *Id.* at Vol. 3, 234:19-235:6. Accordingly, Atlantic Richfield's undisputed evidence should have led the Court to conclude that the Unspent Funds are not allocable because they are not necessary response costs.[3]

## II)  CERCLA INCLUDES A PROCEDURE FOR RECOVERING FUTURE COSTS.

Because Asarco could not and did not present evidence that the Unspent Funds are necessary response costs, Asarco instead argued that those funds would be spent in the future. The Court accepted this argument, treating the Unspent Funds as future costs that would be incurred after the judgment. Findings of Fact, Conclusions of Law and Judgment, Doc. No. 269 at COL at ¶ 45. But Asarco's prediction that the Unspent Funds will eventually be spent should not have allowed it to recover a money judgment for those costs now.

Under CERCLA Section 113, Asarco should seek a declaratory judgment regarding the Unspent Funds it believes will become necessary response costs in

---

[3] As detailed in Atlantic Richfield's Proposed Amended Post-Trial Findings of Fact and Conclusions of Law (Doc. No. 267), Asarco also failed to prove the necessary elements to recover the administrative costs and natural resource damages that comprise nearly $12 million of the $111 million allocated by the Court. Doc. No. 267, FOF at ¶ 5 & COL at ¶ 56. Natural resource damages are not response costs that Asarco can allocate without proving Atlantic Richfield's contribution to the alleged harm to natural resources and how those resources will be restored. The administrative costs are simply a cost of convenience Asarco must bear for demanding a cash-out/walkaway settlement rather than performing the remedy itself.

the future:  "In any such action described in this subsection [regarding cost-recovery actions], *the court shall enter a declaratory judgment* on liability for response costs or damages *that will be binding on any subsequent action or actions to recover further response costs or damages*."  42 U.S.C. § 9613(g)(2) (emphasis added).  This declaratory judgment mechanism avoids the conflict Asarco has created here, *i.e.*, a request that the Court award costs that have not been incurred and that the plaintiff cannot prove are necessary response costs.  Instead, CERCLA's declaratory judgment mechanism directs plaintiffs to defer seeking those costs until they have been expended and can be proved to be recoverable.

The Ninth Circuit's decision in *Boeing Co. v. Cascade Corp.* demonstrates how claims for future, unspent costs are to be managed.  There, the district court awarded a declaratory judgment ordering future response costs be allocated using the same percentages used to allocate past costs.  207 F.3d 1177, 1191 (9th Cir. 2000).  The district court explained that, to obtain a judgment for the amount of any future costs, the parties would have to return to court to prove the necessity of those costs and compliance with the National Contingency Plan.  920 F. Supp. 1121, 1141 (D. Or. 1996).  The Ninth Circuit approved that arrangement upon concluding that it was consistent with both the text and purpose of CERCLA's contribution provisions.  207 F.3d at 1191.

7

Asarco elected not to invoke these procedures.  Instead, in both its
Complaint and Amended Complaint, Asarco pled a single cause of action for
contribution and sought a liquidated judgment "in a sum to be determined by the
Court" without any request for declaratory relief.  Doc. No. 1, pp. 7-10; Doc. No.
28, pp. 6-9.  So too, in the Pretrial Order, Asarco again sought only monetary
relief.  Doc. No. 234, p. 17.  But Asarco cannot obtain monetary relief without
proving that the monies allocated are necessary response costs, and it cannot prove
that the Unspent Funds are (or will be) necessary response costs when there is no
present threat to human health or the environment.  Asarco's failure to seek
declaratory relief is either fatal to its claim for the Unspent Funds or, at the least,
should cause the Court to defer Asarco's claim for the Unspent Funds until the
funds are spent and Asarco has evidence establishing that the expenditures
constitute necessary CERCLA response costs.

## III)   THE CASES ASARCO CITED – AND THE COURT RELIED UPON – ARE NOT APPLICABLE.

In concluding that it could award a money judgment allocating the Unspent
Funds, the Court adopted Asarco's misinterpretation of two circuit court opinions.
The Court cited *RSR Corp. v. Commercial Metals Co.* and *American Cynamid Co.
v. Capuano* as "approv[ing] contribution claims made for future responses costs,
even where such costs are uncertain," Findings of Fact, Conclusions of Law and
Judgment, Doc. No. 269 at COL ¶ 45, a conclusion proposed by Asarco, Asarco's

Proposed Findings of Fact & Conclusions of Law, Doc. No. 268 at COL ¶ 45.  But neither case actually supports that conclusion.

In *RSR Corp.*, the plaintiff sued after it had completed the remediation at issue.  496 F.3d 552, 554 (6th Cir. 2007).  The opinion's only reference to future costs relates to the underlying settlement the plaintiff made several years before suing, a settlement in which it agreed to finance and perform the remediation from that point forward and to pay up to $150,000 of any future costs incurred by the United States.  *Id.*  But with the remediation completed before litigation began, the necessary response costs were fixed and no future costs remained at the time of the Court's judgment.  *Id.*  The Sixth Circuit thus did not, as Asarco argued, approve a money judgment allocating future, un-incurred, and likely unnecessary costs like those Asarco seeks here.

Asarco similarly misinterpreted the First Circuit's decision in *American Cynamid*.  There, a plaintiff sued several defendants to recover the amount it paid the United States in a settlement related to groundwater contamination.  381 F.3d 6, 11 (1st Cir. 2004).  By the time of trial, the amount of costs the United States had incurred cleaning up the contamination (over $5 million) already exceeded the amount the plaintiff had paid ($4,253,918).  *Id.* at 26.  There was no question that the costs the plaintiff paid and sought to allocate were necessary response costs; as in *RSR Corp.*, the costs being allocated already had been spent on the actual

cleanup.  The *American Cynamid* court did refer to future costs, but it did so only in using an undisputed estimate of future costs to calculate how much of the amount already paid by the plaintiff should be reimbursed by the defendant.  *Id.* at 26.  *American Cynamid* thus did not award a money judgment allocating future, un-incurred costs for which there was no showing of necessity, as Asarco asks the Court to do here.

## CONCLUSION

Asarco had the burden at trial to prove that $111.4 million it sought to allocate, including $50 million of Unspent Funds, all constituted necessary response costs.  It failed.  Atlantic Richfield therefore respectfully requests that the Court amend its judgment to allocate only $61.4 million rather than $111.4 million. Additionally, Asarco did not seek the declaratory judgment that CERCLA provides for future costs.  But if the Court determines that Asarco still may seek to recover the Unspent Funds as future costs, then the Court should defer granting any judgment including the Unspent Funds until Asarco is able to present evidence that METG has spent the funds in a way that makes them necessary response costs.

Dated this 24th day of July, 2018.

/s/ Benjamin B. Strawn
Randy J. Cox
Randy J. Tanner
BOONE KARLBERG P.C.
201 West Main, Suite 300
P.O. Box 9199
Missoula, MT  59807-9199
Telephone:  406.543.6646
rcox@boonekarlberg.com
rtanner@boonekarlberg.com

William J. Duffy, *pro hac vice*
Kenzo S. Kawanabe, *pro hac vice*
Benjamin B. Strawn, *pro hac vice*
Elizabeth H. Temkin, *pro hac vice*
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, CO  80202-1500
william.duffy@dgslaw.com
kenzo.kawanabe@dgslaw.com
ben.strawn@dgslaw.com
elizabeth.temkin@dgslaw.com

*Attorneys for Defendant Atlantic Richfield Company*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 24th day of July, 2018 a true and correct copy of the foregoing **MOTION TO ALTER OR AMEND JUDGMENT** was filed and served via CM/ECF on the following:

Alicia O'Brien
Gregory Evans
Keola Whittaker
McGUIREWOODS LLP – LOS ANGELES
355 S. Grand Avenue
Suite 4200
Los Angeles, CA  90071
Phone:  (213) 627-2579
Fax:      (213) 627-2579
Email:   aobrien@mcguirewoods.com
             gevans@mcguirewoods.com
             kwhittaker@mcguirewoods.com

Kris McLean
Kris A. McLean Law Firm, PLLC
PO Box 1136
Florence, MT  59833
Phone: (406) 214-1965
Email:   kris@krismcleanlaw.com

Rachel Parkin
MILODRAGOVICH DALE STEINBRENNER
620 High Park Way
PO box 4947
Missoula, MT  59806-4947
Phone:  (406) 728-1455
Fax:      (406) 549-7077
Email:   rparkin@bigskylawyers.com

*/s Melissa Kemp*