IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ASARCO LLC, a Delaware Corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>ATLANTIC RICHFIELD COMPANY, a Delaware Corporation,<br><br>        Defendant. | CV 12–53–H–DLC<br><br><br>ORDER |

On remand, Defendant Atlantic Richfield Company ("Atlantic Richfield")
moves the Court to enter a final judgment allocating $48.5 million as the total
amount eligible for contribution under the Comprehensive Environmental
Response, Compensation, and Liability Act of 1980 ("CERCLA").  (Doc. 314.)
Plaintiff ASARCO LLC ("ASARCO") opposes the motion (Doc. 318), and
separately moves the Court for leave to supplement its Amended Complaint to
"update[] its prayer for relief" in accordance with the Ninth Circuit's instructions.
(Doc. 315, 316.)

For the following reasons, the Court denies Atlantic Richfield's Motion to
Enter Judgment and grants ASARCO's Motion for Leave to Supplement
Complaint.  Consequently, it also sets the schedule to hear evidence on costs

incurred since the 2018 trial.

## BACKGROUND

This case returns to the Court after its second trip to the Ninth Circuit. *ASARCO LLC v. Atlantic Richfield Co.*, 866 F.3d 1108 (9th Cir. 2017) ("*ASARCO I*"); *ASARCO LLC v. Atlantic Richfield Co.*, 975 F.3d 859 (9th Cir. 2020) ("*ASARCO II*").  As the underlying facts are only tangentially important to the instant procedural questions, and because they have been summarized thoroughly throughout this dispute's eight-year lifespan, the Court iterates them here only to the extent necessary to make sense of this ruling.

ASARCO and Atlantic Richfield's[1] respective smelting and fuming operations in East Helena (the "Site") contaminated the groundwater with arsenic. (Doc. 269 at 28, 53.)  After a series of agreements with the Environmental Protection Agency ("EPA") to remediate the damage, ASARCO entered into complimentary settlement agreements and consent decrees with the United States and State of Montana in 2009 to resolve its outstanding environmental liabilities at various Montana sites, including the Site at East Helena.  *ASARCO II*, 975 F.3d at 863.  The consent decree between ASARCO and the United States (the "Decree")

---

[1] Atlantic Richfield is the successor in interest to Anaconda Mining Company, which leased a portion of the East Helena Site from ASARCO and operated a zinc fuming plant there from 1927 to 1972.  *See, e.g., ASARCO II*, 975 F.3d at 862–63.

established a custodial trust to fund the cleanup of several contaminated sites, with

the Montana Environmental Trust Group ("METG") as the custodial trustee and

the EPA as the lead agent[2] for the East Helena Site. *Id.* Pursuant to the Decree,

ASARCO paid $111.4 million[3] into the trust for Site cleanup—"accounting for

comprehensive damage done to the Site by all responsible parties." *Id.* (*See also*

Doc. 269 at 78); *and see ASARCO I*, 866 F.3d at 1115 (stating that ASARCO paid

"$99.294 million (plus other expenses)" to "fully resolve[]" its obligations).

In 2012, ASARCO sued Atlantic Richfield under CERCLA § 113(f)(3)(B),

seeking contribution for its financial liability under the Decree. (*See generally*

Doc. 28.) Specifically, ASARCO asked the Court to hold Atlantic Richfield liable

for its equitable share of the $113 million in costs that ASARCO had allegedly

incurred for response action at the Site. (Doc. 28 at 2.) After an eight-day bench

trial in 2018, the Court determined that ASARCO "incurred $111,403,743 in

response costs" pursuant to 42 U.S.C. § 9607(a)(4)(B)—in other words, the

amount paid by ASARCO in connection with the Decree. (Doc. 269 at 82.) In so

---

[2] As the lead agent, the EPA "is in charge of selecting, approving, and authorizing all work performed and funds expended by METG." *ASARCO II*, 975 F.3d at 863.

[3] Of this amount, $99.294 million was paid for a groundwater remedy to clean up the off-Site groundwater; $8.9 million covered costs to "establish the Custodial Trust and to fund the Custodial Administrative Account for the purposes of administration of the Custodial Trust, of which the proportionate share for the East Helena Site would be $6,403,743"; $706,000 funded the United States Department of the Interior natural resource restoration and future oversight costs for the Site; and $5 million was allocated to the State of Montana for the Site in compensatory natural resource damages. (Doc. 269 at 16–17.)

doing, the Court rejected Atlantic Richfield's trial position that the final costs

subject to ASARCO's contribution claim should be capped at $61.4 million.  (Doc.

269 at 26–27.)  Instead, it adopted the opinion of ASARCO's expert, finding that

"until the groundwater is restored . . . , something more substantial will need to be

done."  (*Id.* at 27.)  Thus, it concluded, "the balance of the approximate $50

million in the trust will most likely be expended to achieve the mandated

remediation results."  (*Id.* at 27–28.)  And ultimately, the Court found Atlantic

Richfield responsible for twenty-five percent of the $111,403,743 million that

ASARCO paid pursuant to the Decree for cleanup of the East Helena Site.  (*Id.* at

88.)

After trial, Atlantic Richfield moved to alter or amend the Court's judgment,

contending that amount allocable should be $61,400,000, not the $111.4 million

ASARCO paid into the trust.  (Docs. 277, 283.)  It explained that "[t]he additional

$50 million the Court awarded are funds that [METG] has not spent and may never

spend."  (Doc. 277 at 2.)  Atlantic Richfield contended that the $50 million in

theretofore "unspent" funds should not factor into the amount eligible for

contribution, because, in relevant part: (1) "ASARCO failed to prove that the

[u]nspent [f]unds are necessary costs of response"; and (2) "CERCLA provides a

declaratory relief process for allocating and then awarding costs paid for

-4-

remediation work after a judgment, but [ASARCO] did not invoke that process."
(*Id.* at 3.)  As to its second point, Atlantic Richfield insisted that ASARCO's
"failure to seek declaratory relief is either fatal to its claim for the [u]nspent
[f]unds or, at the least, should cause the Court to defer ASARCO's claim for the
[u]nspent [f]unds until the funds are spent and ASARCO has evidence establishing
that the expenditures constitute necessary CERCLA response costs."  (*Id.* at 8.)

Noting Atlantic Richfield's repeated assertion that it is "undisputed . . . that
only $61.4 million of the funds [ASARCO] paid" is properly eligible for
contribution (Docs. 277 at 2; 283 at 7), the Court stood by its assessment that
ASARCO had incurred $111.4 million in necessary costs pursuant to the CERCLA
contribution regime: the $61.4 million that Atlantic Richfield conceded plus the
remaining $50 million—which ASARCO had "already paid" pursuant to the
Decree (Doc. 284 at 3).  Therefore, because the Court considered the $111.4
million "a sum certain that [ASARCO] has already paid and that is earmarked for
cleanup at the East Helena site[,]" it did not reach Atlantic Richfield's secondary
argument regarding ASARCO's decision not to seek declaratory relief for any
future costs incurred.  (Doc. 284 at 4.)

Atlantic Richfield appealed.  (Doc. 293.)  In an Opinion written by
Ninth Circuit Judge Jacqueline H. Nguyen, the three-judge panel affirmed the

Court's finding that Atlantic Richfield was responsible for twenty-five percent of the necessary response costs at the Site. *ASARCO II*, 975 F.3d at 862.  However, it agreed with Atlantic Richfield that the Court erred in determining the sum of the costs incurred. *Id.*

Judge Nguyen began the panel's analysis by synthesizing Atlantic Richfield's position on appeal.  "Atlantic Richfield contends . . . that the response costs eligible for contribution should be limited to the $61.4 million that it represents have been incurred so far to remediate the Site." *Id.* at 864–65.  Those funds not yet spent "or earmarked for specific, imminent work cannot qualify as costs 'incurred'[,]" Atlantic Richfield urged.[4] *Id.* at 865.

The panel agreed.  The Court erred when it counted the full $111.4 million ASARCO paid into the trust as response costs subject to contribution. *Id.* at 865.  Although the full dollar value of a settlement agreement like the Decree "may equate with the necessary response costs incurred[,]" the panel explained, "that is not *inherently* so." *Id.* at 866 (emphasis in original).  Rather, a party seeking contribution under CERCLA must show that "the settlement amount represents

---

[4] The $61.4 million "incurred"—either because it was already spent or because it was earmarked for specific, imminent work—included the following amounts, per Atlantic Richfield's September 30, 2017 accounting: approximately half of the trust funds METG "ha[d] spent"; $9.2 million for ongoing costs for operations and maintenance; and $3.7 million to pay for the estimated cost of covering unfumed slag.  (Doc. 269 at 25–26.) *See also ASARCO II*, 975 F.3d at 864.

'necessary response costs incurred consistent with the [national contingency plan].'" *Id.* (citation omitted).  And, the panel said, while "the meaning of 'incur' is sufficiently broad that it does not require that an expense already be paid, it is also not so broad that it encompasses future expenses that are mere potentialities." *Id.*

Here, wrote Judge Nguyen, the expert testimony on which ASARCO relied and that this Court found persuasive was "steeped in speculation[,]" making a "vast logical leap from the broad conclusion that 'something' further will need to be done to remediate the Site to the specific quantification of the necessary response costs for the Site at $111.4 million or greater." *Id.* at 867.  Unlike the evidence presented by Atlantic Richfield, ASARCO "relie[d] on conjecture rather than firmly-grounded facts and figures." *Id.*  So, by rejecting Atlantic Richfield's calculation in favor of ASARCO's, this Court's "forecast was not adequately tethered to any concrete evidence in the record." *Id.*

However, if indeed "something more substantial will need to be done," the panel laid out the procedural path for "a party in [ASARCO's] position [to] ultimately [] recover the corresponding response costs from its fellow responsible parties." *Id.* at 867–68.  Specifically, "the contribution-seeker can pursue (i) contribution for those necessary response costs that have been incurred to date, and

(ii) a declaratory judgment to establish liability and a contribution allocation for those costs that have not been incurred yet, but may be incurred in the future." *Id.* at 868.  Again though, "until further information is known about the nature and costs of that 'something more,' those future costs are not eligible for contribution." *Id.*

Thus, the panel vacated the Court's finding that the full $111.4 million settlement amount was eligible for contribution, and "remand[ed] for further consideration of what necessary response costs were actually incurred within the meaning of CERCLA." *Id.*  The circuit court's judgment took effect on October 6, 2020, when it entered its formal Mandate.  (Doc. 309.)

## DISCUSSION

On remand, Atlantic Richfield asks the Court to enter a new and final judgment allocating $48.5 million as the amount eligible for contribution, based on "[ASARCO]'s pleadings, the evidence it presented at trial, and the Court of Appeals' ruling."  (Doc. 314 at 2.)  ASARCO responds that the Court should apply the doctrine of judicial estoppel to bar Atlantic Richfield from arguing that anything less than $61.4 million is allocable—a position, ASARCO says, that Atlantic Richfield has taken "persistently and unequivocally" on at least thirty documented occasions during this case's tenure in federal court.  (Doc. 318 at 10.)

For its part, ASARCO seeks leave to supplement the First Amended Complaint (Doc. 28) to "comport with the . . . Opinion of the United States Court of Appeals for the Ninth Circuit" (Docs. 315, 316 at 6). Specifically, ASARCO intends to provide evidence of additional cleanup costs, and asks to "update and supplement the prayer for relief in its Amended Complaint [] to include a request for [] recovery of the 25% allocation on Site cleanup costs incurred since the time of trial." (Doc. 316 at 7.) Additionally, it seeks to add a prayer for declaratory relief to recover twenty-five percent of all future incurred costs. (*Id.*) As to ASARCO's first category of proposed supplementation, Atlantic Richfield briefly responds by disputing what costs ASARCO can prove it has incurred since 2018. (Doc. 319 at 7–8.) Then, it more vehemently contends that ASARCO's desire to supplement its Amended Complaint with a prayer for declaratory relief contravenes Federal Rule of Civil Procedure 15(d). (*Id.* at 13–25.)

## I.     Legal Standard

The "rule of mandate" preserves the hierarchical structure of the federal court system by requiring a lower court to "execute the terms of a mandate." *San Francisco Herring Assoc. v. United States Dept. of the Interior*, 946 F.3d 564, 574 (9th Cir. 2019) (citations omitted). Although the rule "forecloses the lower court from reconsidering matters determined in the appellate court, it leaves to the

district court any issue not expressly or impliedly disposed of on appeal." *Id.*
(citations and internal quotation marks omitted).  Thus, when a district court is
confronted with issues that the remanding court never considered, the rule of
mandate "require[s] respect for what the higher court decided, not for what it did
not decide." *United States v. Kellington*, 271 F.3d 1084, 1093 (9th Cir. 2000).  In
the Ninth Circuit, the rule of mandate is jurisdictional, not merely an expression of
common judicial practice.  *Stacy v. Colvin*, 825 F.3d 563, 568 (9th Cir. 2016);
*United States v. Thrasher*, 483 F.3d 977, 982 (9th Cir. 2007).

 With the rule of mandate in mind, the Court will first address Atlantic
Richfield's Motion to Enter Judgment (Doc. 314) before turning to ASARCO's
Motion for Leave to Supplement Complaint (Doc. 315).

## II.     Atlantic Richfield's Motion to Enter Judgment

 The Court need not consider whether the doctrine of judicial estoppel should
be invoked to deny Atlantic Richfield's motion to enter judgment.  Instead, it finds
granting the motion would violate the rule of mandate by running "counter to the
spirit of the circuit court's decision" and depriving the Court of a meaningful
opportunity to follow the panel's directive.  *See Lindy Pen Co. v. Bic Pen Corp.*,
982 F.2d 1400, 1404 (9th Cir. 1993), *abrogated on other grounds by SunEarth,
Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (2016) (en banc).  True, the

panel vacated the Court's finding that the full $111.4 million settlement amount was eligible for contribution.  It did not, however, remand for entry of judgment at some fixed, lesser amount—an instruction the circuit court knows how to give had it so wished.

Instead, this case returned to the Court carrying the plain instruction to "further consider[] . . . what necessary response costs were actually incurred within the meaning of CERCLA." *ASARCO II*, 975 F.3d at 868.  To aid the Court's "further consideration," the panel explained why the expert testimony proffered by ASARCO, and which the Court found most persuasive at trial, was insufficient to establish costs "incurred."  *Id.* at 867.  Specifically, it pointed out that METG had not paid for—nor assumed an obligation to pay for—the pump-and-treat system about which Margaret Staub opined, nor had METG earmarked any funds for that purpose; therefore, the Court's characterization of the cost of such a remedy as "incurred" was erroneously speculative.  *Id.*  Thus, circuit court concluded, "while [it] do[es] not question the district court's finding that further remedial action may be necessary in the future, its forecast was not adequately tethered to any concrete evidence in the record." *Id.* at 868.

Then, and contrary to Atlantic Richfield's assertion that it calculated a final sum certain amount "incurred" (*See* Doc. 314 at 5), the circuit court laid the path

forward for "a party in [ASARCO's] position" to recover future, heretofore non-allocable, costs from its fellow contaminators, like Atlantic Richfield.  *ASARCO II*, 975 F.3d at 867–68.  The panel explicitly suggests that "the contribution-seeker [ASARCO] can pursue (i) contribution for those necessary response costs that have been incurred to date, and (ii) a declaratory judgment to establish liability and a contribution allocation for those costs . . . that may be incurred in the future."  *Id.* at 868.  Notwithstanding Atlantic Richfield's conveniently creative reading of this portion of the Opinion, the Court does not read this passage as the panel merely waxing eloquent about "the options CERCLA makes available to a party" in some alternate and "hypothetical" universe.  (*See* Doc. 319 at 9.)  Rather, the panel's suggested path forward fleshes out the instruction that comes shortly thereafter, which directs the Court to give further consideration of what costs ASARCO has actually incurred.  *ASARCO II*, 975 F.3d. at 868.

        In light of the instructions and guidance from the Ninth Circuit, granting Atlantic Richfield's motion to enter judgment—with no further consideration of the amount ASARCO actually incurred—"would deprive the Court of a meaningful opportunity to follow the directive of the [appellate] court in resolving the issues."  *See Lindy Pen Co.*, 982 F.2d at 1404.  The circuit court did not, as Atlantic Richfield suggests in its reply brief (Doc. 322), expressly or impliedly

determine the proper amount eligible for contribution.  It left that matter for this Court's reconsideration.  *See San Francisco Herring Assoc.*, 946 F.3d at 574 (9th Cir. 2019).  Accordingly, Atlantic Richfield's Motion to Enter Judgment is denied, as it would require the Court to violate the rule of mandate.

The Court turns, then, to the scope of its "further consideration" on remand.

## II.   ASARCO's Motion for Leave to Supplement Complaint

As a preliminary matter, the rule of mandate does not preclude this Court's consideration of ASARCO's motion.  The circuit court's mandate contains no indication "of a clear intent to deny amendment seeking to raise new issues not decided by the prior appeal."  *See Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir. 1986).  Again, the rule of mandate "require[s] respect for what the higher court decided, *not for what it did not decide*."  *Kellington*, 271 F.3d at 1093 (emphasis added).  Consequently, "[a]bsent a mandate which explicitly directs to the contrary, a district court upon remand can permit the plaintiff to 'file additional pleadings, vary or expand the issues . . . .'"  *Nguyen*, 792 F.2d at 1502 (9th Cir. 1986) (quoting *Rogers v. Hill*, 289 U.S. 582, 587–88 (1933)).

Next, even if ASARCO's request to add a prayer for declaratory relief to its Amended Complaint falls outside the scope of Federal Rule of Civil Procedure 15(d), the Court does not view the mischaracterization as fatal to ASARCO's

ultimate goal.[5]  As Atlantic Richfield points out, a supplemental pleading under

Rule 15(d) sets out a "transaction, occurrence, or event that happened after the date

of the pleading to be supplemented."  Put another way, "Rule 15(d) permits the

filing of a supplemental pleading which introduces a cause of action not alleged in

the original complaint *and not in existence when the original complaint was filed*."

*Cabrera v. City of Huntington Park*, 159 F.3d 374, 382 (9th Cir. 1998) (quoting

*United States v. Reiten*, 313 F.2d 673, 674 (9th Cir. 1963)) (emphasis added).

Here, in contrast, the declaratory relief ASARCO seeks was available under

CERCLA's contribution scheme at this case's genesis, pursuant to 42 U.S.C.

§ 9613(g)(2).  In other words, no "transaction, occurrence, or event" occurred after

the date of ASARCO's Amended Complaint that brought its claim for declaratory

relief to life.

　　　　Nevertheless, the title of a pleading is not determinative.  *See Reiten*, 313

---

[5] Atlantic Richfield does not argue that supplementation under Rule 15(d) is the inappropriate procedural tool for ASARCO's request to recover contribution for the cleanup costs it has "incurred since the time of trial."  (*See* Docs. 316 at 7; 319 at 7–8.)  Instead, it disputes the evidence on which ASARCO intends to rely to prove those costs.  (Doc. 319 at 6–8.)  The Court agrees that Rule 15(d) applies to ASARCO's request to seek costs that accrued after the filing of the Amended Pleading.  *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 382 (9th Cir. 1998); *see also Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988) (To properly invoke Rule 15(d), "some relationship must exist between the newly alleged matters and the subject of the original action.").  In its Amended Complaint, ASARCO sought a judgment against Atlantic Richfield for contribution "in a sum to be determined by the Court to be owed to [ASARCO] for response costs."  (Doc. 28 at 10.)  In its instant motion ASARCO asks that the relief it sought in its Amended Complaint be supplemented to include those costs it has allegedly incurred since trial. That is, a relationship clearly exists between the matter ASARCO would newly allege and the subject of the original action.

F.2d at 674.  While ASARCO's request to specify a plea for declaratory relief may be inappropriate under Rule 15(d) because the relief existed when the Amended Complaint was filed, "[a] Rule 15(a) *amendment* [] is appropriate for . . . electing a different remedy than the one originally requested."  6 *Fed. Prac. & Proc. Civ.* § 1474 (3d ed.) (emphasis added).  Accordingly, to the extent that ASARCO's proposed prayer for declaratory relief does not fall within the scope of Rule 15(d), the Court construes it as a motion for amendment, not supplement.  *C.f. Wulff v. CMA, Inc.*, 890 F.2d 1070, 1073 (9th Cir. 1989) (stating that "[t]he erroneous characterization of the corrected pleading as an 'amended complaint' rather than as a supplemental pleading is immaterial").  The Court finds a triad of support for this alternative construction.

First, the Federal Rules of Civil Procedure endeavor "to minimize technical obstacles to a determination of the controversy on its merits."  *Reiten*, 313 F.2d at 675.  To deny the motion because ASARCO tethered it to the wrong subsection of Rule 15 would obviate this goal.  Second, and as the parties agree, "[t]he standards for granting or denying a motion to supplement pleadings under Rule 15(d) are the same as those applied under Rule 15(a)." *Glatt v. Chicago Park Dist.*, 87 F.3d 190, 193 (7th Cir. 1996); *see also Flathead Irrigation Dist. v. Jewell*, 121 F. Supp. 3d, 1008, 1023 (D. Mont. 2015) (confirming that the factors for assessing a motion

-15-

to supplement under Rule 15(d) "overlap" with the factors for assessing a motion
to amend under Rule 15(a)).  Thus, the Court's construction of ASARCO's motion
will leave its substantive analysis unchanged.  And third, the Court cannot ignore
that the Ninth Circuit's Opinion invites "a party in ASARCO's position" to do
exactly what ASARCO's instant motion seeks to do.  That is, ASARCO asks for
leave to plead for: (1) contribution for those necessary response costs that have
been incurred to date; and (2) a declaratory judgment to establish liability and a
contribution allocation for those costs that may be incurred in the future.  *ASARCO
II*, 975 F.3d at 868.

Thus, construing ASARCO's motion as seeking to supplement[6] and amend
its Amended Complaint, the Court is guided "by the underlying purpose of Rule 15
to facilitate decisions on the merits, rather than on pleadings or technicalities."
*United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).  In other words, the
"spirit of the Federal Rules" instructs that leave should be "freely given" to amend
or supplement under Rule 15.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The
parties agree that four factors determine whether ordinarily "freely given" leave
should be denied: (1) bad faith of the moving party; (2) undue delay; (3) prejudice
to the opposing party; and (4) futility of the proposed amendment.  *Jewell*, 121 F.

---

[6] *See supra* n.5.

Supp. 3d, at 1022 (citing *Lockheed Martin Corp. v. Newark Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999)).

Because Atlantic Richfield declines to respond to ASARCO's arguments on the first and fourth factors—bad faith and futility—the Court deems them well-taken. D. Mont. L. R. 7.1(d)(1)(B)(ii). That is, without any showing to the contrary, the Court concludes that ASARCO seeks to correct its Amended Complaint in good faith, and that its proposed pleading is not futile. So, following Atlantic Richfield's lead, the Court considers only whether: (1) ASARCO unduly delayed supplementing and amending its Amended Complaint; and (2) the proposed supplement and amendment, if permitted, would unfairly prejudice Atlantic Richfield.

## A.    Delay

Atlantic Richfield argues that the eight-year gap between the filing of the Amended Complaint (Doc. 28) and the proposed correction constitutes an "egregious delay[]" warranting denial of ASARCO's Rule 15 motion. (Doc. 319 at 20.) Specifically, Atlantic Richfield contends that ASARCO "made no effort to prove [at trial] how much of the [t]rust funds constituted necessary response costs incurred." (*Id.* at 19–20.) Now, Atlantic Richfield says, ASARCO improperly "wants to be relieved of the consequences" of its chosen trial strategy almost a

decade after it pleaded its case.  (*Id.* at 19–20.)  The Court agrees that in a vacuum eight years is a long time, but it disagrees that the intervening period in this case warrants denial of ASARCO's motion.

First, the Ninth Circuit does not weigh the factors outlined in *Jewell* equally, and delay, specifically, carries little heft.  "[D]elay alone no matter how lengthy is an insufficient ground for denial of leave to amend [or supplement]."  *Webb*, 655 F.2d at 980.  Thus, "[t]he mere fact that an amendment [or supplement] is offered late in the case is . . . not enough to bar it."  *Id.* (citation omitted).  Consequently, the Ninth Circuit held that it was an abuse of discretion to deny leave under Rule 15 "even five years after the original pleadings, where neither bad faith nor prejudice was apparent."  *Id.* (citing *Howey v. United States*, 481 F.2d 1187, 1190–92 (9th Cir. 1973)).

Second, ASARCO's proposed complaint—lodged just under two weeks after the Ninth Circuit's Mandate issued—does not force Atlantic Richfield to play "whack-a-mole" with "seriatim pleading" practice following a years' long, inexplicable delay.  (*See* Doc. 319 at 20 (citing *Klein v. PetroChina Co.*, 644 F. App'x 13, 15 (2d Cir. 2016)).)  Contrary to its contention that ASARCO "made no effort to prove . . . necessary response costs incurred," ASARCO relied on Margaret Staub's expertise to argue that the entirety of the trust funds designated

for the East Helena Site were "incurred" within the meaning of CERCLA. This Court, in turn, found Ms. Staub's trial testimony carried the day, leading it to erroneously decide that that entire $111.4 million in the trust were costs incurred and eligible for contribution by ASARCO's fellow responsible party. The Ninth Circuit then vacated that finding and returned the case to this Court for further consideration.

Further, ASARCO's proposed complaint—which would be only its second amended pleading in this eight-year-old case—does not present "new theories" without "satisfactory explanation for [the] failure to fully develop [those] contentions" earlier. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) (citation omitted). The new proposed pleading simply allows the Court, which improperly relied on speculative evidence at trial, to follow the Ninth Circuit's instruction to "further consider[]" what response costs ASARCO actually incurred within the meaning of CERCLA. *ASARCO II*, 975 F.3d at 868. And, for those costs that have not been incurred yet, but may be incurred in the future, ASARCO asks for a declaratory relief based on Atlantic Richfield's already established liability. Nothing about ASARCO's new complaint can be fairly analogized to the kind of abusive "seriatim pleading" about which the court in *Klein* was concerned. (*See* Doc. 319 at 20.)

Finally, an explanation exists for ASARCO's purported "failure" to originally plead for future response costs: until September 2020, ASARCO believed that the entirety of the funds it paid pursuant to the Decree constituted costs "incurred" based on its understanding of the law and its expert's assessment of the facts.  (*See* Doc. 28 at 10 (seeking relief for contribution in a "sum to be determined by the Court to be owed to [ASARCO] for response costs").)  So, too, did this Court.  In other words, ASARCO's decision not to specifically plead for declaratory relief in its First Amended Complaint was based on its reasonable belief that the funds it paid into the trust pursuant to the Decree were necessary costs "incurred" within the meaning of CERCLA.  The Court finds no evidence of dilatory motive or whack-a-mole pleading practice.

Therefore, the Court concludes that, under these circumstances, the eight-year gap between the First Amended Complaint and ASARCO's proposed pleading is an insufficient basis to deny its motion for leave to file.  The amendment and supplement seek only to conform this case to the Ninth Circuit's recent Opinion and facilitate the Court's efforts to efficiently comply with its instructions.

## B.    Prejudice

Where delay is a feather in the *Jewell* analysis, prejudice is an elephant.  "As

this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citations omitted).  While the spirit of "liberality" inherent in Rule 15 "is not dependent on whether the amendment [or supplement] will add causes of action or parties[,]" it is "subject to the qualification that amendment [or supplement] of the complaint does not cause the opposing party undue prejudice[.]" *DCD Programs, LTD v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).  Indeed, prejudice is the "touchstone of the inquiry" under Rule 15, *Eminence Capital, LLC*, 316 F.3d at 1052 (citation omitted), and the party opposing a Rule 15 motion to amend or supplement bears the burden of showing it, *DCD Programs, LTD*, 833 F.2d at 187.

Atlantic Richfield wholly fails to show that ASARCO's proposed pleading would cause it prejudice.  In one conclusory sentence, it protests that it "defended this case through all significant milestones—including trial—without facing a request for declaratory relief." (Doc. 319 at 22.)  However, Atlantic Richfield offers no explanation as to how a plea for declaratory relief, after its responsibility has been established and affirmed at twenty-five percent, somehow prejudicially exposes it to more liability than has already been found.  Indeed, the Court notes that, in its Amended Motion to Alter or Amend Judgment, Atlantic Richfield

suggested deferring ASARCO's claim for any future costs, in light of the twenty-five percent allocation, "until the funds are spent and ASARCO has evidence establishing that the expenditures constitute necessary CERCLA response costs." (Doc. 277 at 8.)  In other words, Atlantic Richfield itself offered the exact result that ASARCO's plea for declaratory relief would produce.

Atlantic Richfield then goes on, confusingly, to focus on the prejudice that *ASARCO* will suffer if the Court grants its motion.  (*Id.* at 23–24.)  Its apparent concern is that ASARCO will be unable to prove additional costs incurred beyond the $48.5 million it contends is "all the evidence at trial support[ed]."  (Doc. 314 at 8.)  The Court appreciates the altruism.  However, whatever evidentiary hurdle ASARCO faces as it relates to costs it has incurred since trial has no bearing on whether the instant Rule 15 motion will cause *Atlantic Richfield* undue prejudice.

Furthermore, permitting ASARCO to amend its pleading will promote judicial efficiency.  *See Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997).  "To determine if efficiency might be achieved, courts assess whether the entire controversy between the parties could be settled in one action[.]"  *Id.* (citation and internal quotation marks omitted).  Here, granting the Rule 15 motion will permit the parties to settle their controversy in one action, rather than through piecemeal, protracted litigation.  The goal of judicial efficiency

not only conserves court resources, but also mitigates the prejudice caused to all parties through litigation *ad infinitum*.

Therefore, finding no prejudice to Atlantic Richfield and no undue delay, the Court will grant ASARCO's motion for leave to file its amended and supplemented pleading.  (*See* Docs. 315, 316-1.)  Consequently, ASARCO's prayer for relief now includes: (1) contribution on all costs "incurred" since trial; and (2) declaratory relief pursuant to 42 U.S.C. § 9613(g)(2) to recover future costs actually "incurred".  (*See* Doc. 316.)

As a final note, the Court assures both parties that it does not forget the facts it found at the first trial as it relates to those costs undisputedly "incurred" within the meaning of CERCLA.  (*See* Doc. 269 at 25–26.)  Specifically, it understands Atlantic Richfield's current position that $48.5 million equates to "the amount of response costs concretely evidenced [at trial] as 'incurred'[,]" and is therefore "the only allocable amount."  (*E.g.,* Doc. 322 at 15.)  Similarly, the Court does *not* read the Ninth Circuit's opinion nor its instructions to bring the ledger in this case back to zero.  Indeed, the Court is energetically disinterested in relitigating the costs that the parties have already established and conceded as necessary and "incurred."

Accordingly, the Court appreciates and accepts Atlantic Richfield's invitation to firmly set the evidentiary floor on remand at $48.5 million—the

amount constituting the undisputed incurred costs eligible for contribution. However, it warns both parties that its patience for cannibalizing factual positions wears thin.  To that end, "statements of fact contained in a brief *may* be considered [judicial] admissions of the party in the discretion of the [Court]."  *Am. Title Ins. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988) (emphasis in original).  The Court reminds the parties that "[j]udicial admissions are formal admissions . . . which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."  *Id.* at 226.

## ORDER

For the foregoing reasons, IT IS ORDERED that Atlantic Richfield's Motion to Enter Judgment (Doc. 314) is DENIED, and ASARCO's Motion for Leave to Supplement Complaint (Doc. 315) is GRANTED.  ASARCO may file the proposed pleading currently lodged at Document 316-1.

IT IS FURTHER ORDERED that, at 9:00 a.m. on February 4, 2021 at the Russell Smith Federal Courthouse in Missoula, Montana, the Court will hear evidence on those necessary response costs that have been incurred since trial.  The Court anticipates that the evidentiary hearing will continue through February 5, 2021.  **As outlined above, the Court will not entertain argument that less than $48.5 million is the amount eligible for contribution.**

-24-

Finally, IT IS ORDERED THAT the following schedule will govern pre-hearing proceedings:

| | | |
|---|---|---|
| (1) | Discovery Deadline: | December 21, 2021 |
| (2) | Deadline to Exchange Hearing Exhibits: | January 11, 2021 |
| (3) | Deadline to File Stipulated Facts: | January 25, 2021 |
| (4) | Deadline to File and Submit[7] Proposed Findings of Fact and Conclusions of Law: | January 27, 2021 |

DATED this 19th day of November, 2020.

Dana L. Christensen, District Judge
United States District Court

---
[7] Submitted in Word format to dlc_propord@mtd.uscourts.gov.